IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-14-7 |
| v. | |
| QUINTON DAVIS, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

Defendant filed a Motion to Suppress. Doc. 70. The Government filed a Response. Doc. 114. I held a hearing on this Motion on October 21, 2025. Defendant's counsel and counsel for the Government appeared at the hearing, and the parties provided additional argument and evidence. For the following reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.

### BACKGROUND

Defendant is charged with one count of attempting to possess contraband in prison, in violation of 18 U.S.C. § 1791(a)(2). Doc. 3 at 11. On July 22, 2022, Defendant allegedly attempted to obtain postage stamps—a prohibited object—while incarcerated. Id. Defendant filed this Motion to Suppress, arguing that law enforcement officers interrogated him without advising him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Doc. 70. Defendant argues that he was asked questions designed to elicit an incriminating response, including "whether he purchased contraband from inmates, and whether he directed someone to make a cash payment to a certain CashApp account." Id. at 1. Defendant seeks to suppress any evidence obtained because of this interview. Id.

**DISCUSSION**

I.  **Proposed Findings of Fact**[1]

During the relevant time period, Defendant was a prisoner at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup").  On April 24, 2024, at the request of Department of Justice Office of the Inspector General Special Agents Benjamin Gerrol ("Special Agent Gerrol") and Brock Zeeb ("Special Agent Zeeb"), Bureau of Prisons Special Investigative Agent Justin David ("Agent David") brought Defendant to one of FCI Jesup's smaller visitation rooms.  See Court's recording system For the Record ("FTR"), Oct. 21, 2025, 10:08:30–10:09:38, 10:011:14–10:11:21.  Once in the visitation room, Defendant was interviewed by Special Agents Gerrol and Zeeb, with Agent David also remaining in the room during the interview.  Id. 10:11:59–10:12:10.  The agents did not tell Defendant that he was going to be interviewed before Defendant was brought to the visitation room.  Id. 10:09:44–10:09:53.

Upon arriving at the visitation room, Defendant sat in a chair at a table with the agents. Id. 10:12:25–10:12:30.  The agents did not instruct Defendant to sit in a specific seat.  Id.  Before asking any substantive questions, Special Agent Gerrol asked Defendant if he understood that his participation in the interview was voluntary and that he was free to leave the interview at any time.  Id. 10:17:45–10:18:01.  Defendant said yes to both questions.  Id.  The agents did not read Defendant his Miranda rights before asking substantive questions.  Id. 10:12:40–10:12:45.

The agents asked Defendant whether he purchased contraband while in FCI Jesup.  Id. 10:22:48–10:22:51.  Defendant provided potentially incriminating responses, stating that he

---

[1] These proposed findings of fact are based on evidence presented with the parties' briefing and during the October 21, 2025 hearing.  The Government provided with its Response to Defendant's Motion to Suppress a memorandum prepared by Special Agent Gerrol summarizing the challenged interview.  At that hearing, Inspector General Special Agent Benjamin Gerrol testified (and was cross-examined), and the Government introduced an audio recording and transcript of the interview.

2

purchased contraband.  Id. 10:22:30–10:23:15.  The interview lasted less than 10 minutes.  Id.  After the interview, Defendant left and returned to the typical prison environment.  Id. 10:24:40–10:24:49.

None of the agents raised their voices during the eight-minute-long interview.  Id. 10:16:40–10:24:30.  The agents did not carry weapons.  Id. 10:12:15–10:12:20.  When testifying at the October 21, 2025 hearing, Special Agent Gerrol did not specifically remember whether Defendant wore restraints.  Id.10:25:00–10:25:21.  But Special Agent Gerrol identified a "jingling" noise on the digital recording of the interview the Government submitted as Government's Exhibit 1 as sounding like "a belly chain, and/or foot shackles" and stated that Defendant "could have been handcuffed."  Id.

## II.   Legal Standard

The right to Miranda warnings attaches when custodial interrogation begins.  United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004).  The Miranda court held pre-interrogation warnings are required in the context of custodial interrogations given the "compulsion inherent in custodial surroundings."  Miranda, 384 U.S. at 458.  The United States Supreme Court explained "custodial interrogation" means "questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id. at 444.

"Interrogated suspects who have previously been convicted of a crime live in prison."  Howes v. Fields, 565 U.S. 499, 511 (2012).  And "service of a term of imprisonment, without more, is not enough to constitute Miranda custody."  Id. at 512.  "A person is 'in custody' for these purposes if he finds himself 'in circumstances that are thought generally to present a serious danger of coercion.'"  United States v. Woodson, 30 F.4th 1295, 1303 (11th Cir. 2022)

(quoting Howes v. Fields, 565 U.S. 499, 508–09 (2012)). The court's analysis of whether coercion exists proceeds in two steps. "The first goes more to nature and the second more to degree." Id.

First, the court considers whether "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." Howes, 565 U.S. at 509. "To answer that question, [the court] examine[s] 'all of the circumstances surrounding the interrogation . . . .'" Woodson, 30 F.4th at 1303 (quoting Howes, 565 U.S. at 509). "But 'the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody . . . .'" Id. (quoting Maryland v. Shatzer, 559 U.S. 98, 112 (2010)). Second, if law enforcement officers restrained the interviewee's freedom of movement, the court must then "consider 'whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda.'" Id. (quoting Howes, 565 U.S. at 509).

Whether a suspect is 'in custody' is an objective inquiry. Id. "The actual, subjective beliefs of the defendant and the interviewing officer[s] on whether the defendant was free to leave are irrelevant," and the person from whose perspective the court assesses the circumstances is a reasonable, innocent person. United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)). The defendant "bears the burden of showing that he was in custody when he made the contested statements." Woodson, 30 F.4th at 1302 (citing United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977)).

**III.   Analysis**

In his Motion, Defendant argues generally that the agents unlawfully interviewed him without providing Miranda warnings. Doc. 70 at 1. Defendant contends that the Court must suppress all evidence stemming from the interview. Id. at 2. The Government does not dispute

4

that Defendant was not advised of his rights, arguing instead that Defendant's statements are admissible under Howes.  Doc. 114 at 1.

    **A.**    **Freedom to Depart**

In terms of analyzing freedom of movement, the "[m]ost important [circumstance] is the explicit advice [the defendant] receive[s] at the beginning of the interview . . . ."  Woodson, 30 F.4th at 1304.  "[W]hen officers advise a defendant 'that he is free to leave and is not in custody,' we generally assume that he is not in custody absent restraints 'so extensive that telling the suspect he was free to leave could not cure the custodial aspect of the interview.'"  Id. (quoting United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006)).  Here, it is undisputed that Defendant was informed at the beginning of the interview that the interview was voluntary and that he was free to leave the interview at any time,  FTR 10:27:12–10:27:38.

The Court must also consider "'the circumstances surrounding the interrogation,' including the location and duration of the questioning, statements made during the interview, the presence or absence of physical restraints, and whether the person was released after the interview."  Woodson, 30 F.4th at 1303 (quoting Howes, 565 U.S. at 509).  Other relevant circumstances include "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled."  United States v. Barry, 479 F. App'x 297, 299 (11th Cir. 2012) (quotation omitted).

These other circumstances demonstrate that Defendant had the freedom to depart.  It is undisputed that officers told Defendant that his participation in the interview was voluntary.  The interview was short, lasting less than 10 minutes.  See Woodson, 30 F.4th at 1303 (holding that "the duration of the interview did not tip the balance in favor of custody" when the defendant was interviewed for an hour); see also United States v. McDowell, 250 F.3d 1354, 1363 (11th

Cir. 2001) (holding that a four-hour long interview was non-custodial). Defendant apparently wore leg irons, a belly chain, or handcuffs, but nothing in the record suggests that Defendant was unable to leave at any time. Indeed, Defendant left at the end of the short interview. The agents present at the interview did not carry weapons and did not touch Defendant before or during the interview. There is no evidence that the agents acted in an intimidating or coercive manner, promised Defendant anything, raised their voices, or made threats.

The circumstances of the interview show that Defendant's freedom of movement was not "curtailed to a degree associated with formal arrest." United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010).

**B.    Coercive Pressure**

The Court must also consider "whether the relevant environment presents the same coercive pressures as the type of station house questioning at issue in Miranda." Howes, 565 U.S. at 509. During the October 21, 2025 hearing, Defendant pointed to three aspects of the interview that he contends show coercive pressure.

First, Defendant points to the fact that the agents approached him "unbeknownst to him, on a regular day at the prison [and] escorted [him] to an interview room . . . ." FTR 10:26:15–10:26:29. However, the parties do not dispute that the visitation room was a familiar environment to Defendant, and Defendant does not argue that movement to the visitation room was so jarring that it could be equivalent to the "shock that very often accompanies arrest." Howes, 565 U.S. at 511.

Second, Defendant stated that he "had no idea about the interview [in advance and] did not ask for the interview." FTR 10:26:29–10:26:34. But the fact that the agents initiated the encounter, even without warning, does not show that Defendant was coerced. Interviews

6

initiated by law enforcement officers can still be non-custodial for Miranda purposes. See, e.g., Woodson, 30 F.4th at 1304 (holding that an interview started by law enforcement was non-custodial).

Third, Defendant contends he was interviewed in a police-dominated atmosphere that required Miranda warnings because the agents "restrained [him and] placed [him] in a small room" with several agents present during the interview. FTR 10:26:32–10:26:40. Even if law enforcement officers dominated the interview environment, this not enough show that Defendant was in custody for Miranda purposes. See United States v. Matcovich, 522 F. App'x 850, 852 (11th Cir. 2013) (holding that an interrogation was non-custodial despite taking place in a "police-dominated atmosphere" when, among other things, the defendant was "in the familiar and comfortable surroundings of his home" and "was free to go outside").

On balance, Defendant has not met his burden in showing that the "circumstances surrounding the interview . . . exert[ed] 'the coercive pressure that Miranda was designed to guard against.'" Woodson, F.4th at 1303 (quoting Maryland v. Shatzer, 559 U.S. 98, 112 (2010)). Ultimately, Defendant was subjected to brief, voluntary interview in a familiar part of the prison where Defendant was housed. The interviewing agents did not threaten, intimidate, or coerce Defendant into providing statements; Defendant voluntarily participated in the interview. Therefore, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate

7

Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of November, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA